UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62247-BLOOM/Valle

PAVEL BATTLES,

     Plaintiff,

v.

AMERICAN VAN LINES, INC.,

     Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff's Complaint, ECF No. [1] (the "Complaint" or "Compl."), to vacate the judgment against him in the underlying arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The Court has carefully reviewed the Complaint, and all exhibits attached thereto, the record, and the applicable law, and is otherwise fully advised.[1] For the following reasons, the Court finds that vacatur is not warranted.

### I. Background

Plaintiff Pavel Battles ("Plaintiff" or "Battles") first filed a Complaint against the Defendant American Van Lines, Inc. ("Defendant"), on December 12, 2012, alleging claims for breach of contract and unpaid wages as a driver for the Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). *See* Case No. 12-cv-62477-WJZ. Defendant

---

[1] Defendant, defined below, failed to respond to the Complaint by the applicable response deadline pursuant to the Federal Rules of Civil Procedure. After the response deadline, the Court entered Orders to Show Cause, ECF Nos. [8], [9], [10], providing Defendant with three additional opportunities to respond. The Orders cautioned that, if Defendant failed to respond, the Court would consider the merits of the Complaint without the benefit of a response. *See id.* Nevertheless, despite these multiple warnings, Defendant has yet to respond to the Complaint or request additional time within which to do so. Accordingly, the Court considers the instant Complaint without the benefit of a response.

is a motor carrier involved in interstate commerce.  ECF No. [1-3] ("Motion to Dismiss"). According to the Complaint, in the initial case before another district court in the Southern District of Florida in March 2013, "Defendant produced for the first time an agreement to arbitrate the wage claim.  [Even though] the agreement to arbitrate was not executed by either party, and a portion of the agreement missing (including the material term of how payment was to be made to Petitioner), Petitioner consented to move the wage claim to the American Arbitration Association [the 'Association'] for a fair and full adjudication of this matter."[2] Compl. at 2.  Before the appointment of an arbitrator in this matter, Defendant filed its Motion to Dismiss, which set forth affirmative defenses as well as an argument for dismissal of Plaintiff's FLSA claim based on the expiration of the applicable statute of limitations.  *Id.* at 2-3.

The Complaint states that, after the appointment of Arbitrator Richard J. DeWitt ("Arbitrator" or "DeWitt"), the parties conducted a preliminary hearing by phone on December 3, 2014, before DeWitt.  *Id.* at 3.  Plaintiff represents that all parties were prepared for and participated in this call, although the Arbitrator appears to dispute this fact.  *Id.*  During the call, the Arbitrator instructed Battles[3] to file an amended Statement of Claim by December 16, 2014, and entered an order directing the same ("Order No. 1").  *Id.*  After allegedly failing to receive Order No. 1, on December 24, 2014, Plaintiff sent an email inquiring as to the status of the Order: "I believe the [p]arties were directed to submit further information regarding the claim, however, I do not see a due date for same."  *Id.*  On December 29, 2014, a copy of Order No. 1 was resent to all parties.  *Id.*  Plaintiff then filed a Memorandum of Law and Statement of Claim,

---

[2] There is some dispute as to whether a valid and operative agreement to arbitrate existed between the parties; nevertheless, Plaintiff's voluntary consent to the instant arbitration renders this issue moot. Plaintiff does not provide the Court with a copy of any such agreement.

[3] Plaintiff and Plaintiff's counsel are referred to interchangeably throughout this opinion, as the Complaint does not clearly distinguish between them.

ECF No. [1-5] ("Statement of Claim"), on January 8, 2015, sending copies to Bryan Corbett, the Case Administrator from the Association ("Corbett"), and Defendant. *Id.*

A few months later, on April 27, 2015, Corbett offered proposed dates to the parties for which to schedule another status hearing by phone. *Id.* at 3. Realizing that no date had been set, on May 12, 2015, Plaintiff, through counsel, inquired as to the status of the call via correspondence to Corbett. *Id.* at 3-4. On May 14, 2015, Corbett advised that he needed to request a new set of dates from DeWitt. *Id.* at 4. Plaintiff, through counsel, again followed up with Corbett on May 26, 2015, to which Corbett responded on May 27, 2015, with additional availability for the call. *Id.* On the same date, Plaintiff confirmed his availability for certain proposed dates, while Defendant advised the parties that it was unavailable for all of the dates proposed. *Id.* Accordingly, Plaintiff requested that Corbett provide "new dates in short order." *Id.* It was not until July 14, 2015, however, that the parties received a new set of dates. Upon receiving this correspondence, Plaintiff advised that any of the proffered dates worked for him as he "wished to move this arbitration forward to finally resolve this matter." *Id.* The parties eventually settled on July 24, 2015, at 10:30 a.m.

However, according to the Complaint, the email containing this final date was inadvertently sent to Plaintiff's spam folder. Plaintiff did not discover the error until after July 24, 2015 – thus, he missed the status call. He "sincerely apologized" to the Arbitrator and the Defendant "for not being aware of, and missing," the call. *Id.* Nevertheless, as a result of Plaintiff's failure to attend, DeWitt entered an Order, ECF No. [1-4] ("Order No. 2"), dismissing Plaintiff's Complaint with prejudice. *Id.* This Order represents that, in addition to missing the call, Plaintiff was "not prepared to proceed and requested a postponement" of the initial December 3rd call and "failed to file an amended Statement of Claim by the required date or to

file one at all." *Id.*  Moreover, "[a]fter 15 minutes waiting for [Plaintiff] to join the hearing[,] the Association contacted [Plaintiff's c]ounsel by telephone and was advised that he was not available to participate in the [] call." *Id.*  DeWitt, ultimately, found that Plaintiff "failed to proceed with [his] Claims and therefore [] abandoned them."   Accordingly, he granted Defendant's Motion to Dismiss Plaintiff's FLSA claim, although he did not state on which basis proffered by Defendant, and dismissed Plaintiff's breach of contract claim *sua sponte*.   Both claims were dismissed with prejudice.

Believing that this dismissal with prejudice was unjust and premised on faulty reasoning, Plaintiff filed a Motion for Reconsideration, ECF No. [1-7] ("Motion for Reconsideration"), which the Arbitrator denied in subsequent Order, ECF No. [1-8] ("Order No. 3").  In his Motion for Reconsideration, Plaintiff challenged the veracity of a number of DeWitt's findings.  First, Plaintiff alleged that he was in fact prepared for and participated in the December 3rd call.  Any representation to the contrary, he contended, was belied by DeWitt's statements in Order No. 2 confirming his attendance.  Order No. 2 ("A Status Hearing was held by telephone on December 3, 2014, at 2:00 p.m. (EST) before Arbitrator DeWitt.  Appearing at the hearing was Brian J. Militzok, Esq. on behalf of the [Plaintiff] . . . and Elias Hilal Esq. on behalf the [Defendant] . . . and Bryan Corbet, Case Manager, on behalf of the Association.").  Second, he disputed the finding that he failed to file an amended Statement of Claim, explaining that he had filed the requested document.  Third, Plaintiff maintained that DeWitt's claim that he failed to cooperate in efforts to reschedule the second hearing were patently untrue – "The record clearly indicates otherwise as [Plaintiff] always provided a prompt response to scheduling and was the only party seeking to push this arbitration forward."  Compl. at 7.  Last, Plaintiff argued that dismissal was improper because it was based upon Defendant's Motion to Dismiss, which argues, *inter alia*, a

statute of limitations defense that fails to resolve the entirety of Plaintiff's FLSA claim when properly applied – and is also an inherently factual inquiry.  The Court notes, however, that regardless of the applicability of the Motion to Dismiss, DeWitt specifically dismissed both of Plaintiff's claims with prejudice.  Order No. 2.

In Order No. 3, DeWitt conceded that Plaintiff had in fact filed an amended Statement of Claim, albeit untimely and incomplete.  *Id.* (noting that the amended Statement of Claim failed to address whether Battles was employed by a third-party contractor).  In addition to Plaintiff's failure to participate in the second hearing, Order No. 3 goes on to introduce two alleged inconsistencies in Plaintiff's arguments as additional justifications for dismissal:

> b. [Plaintiff] made untrue contradictory assertions in his abbreviated Amended Claim vis-à-vis his initial Statement of Claim.  In his initial Claim[, Plaintiff] asserted that the parties entered into an Independent Contractor Operating Agreement[,] which had an arbitration provision and was the basis for this Arbitration.  [Plaintiff] uploaded the Agreement to the Association's website in connection with his initial Claim.  In his Amended Claim, [Plaintiff] asserted that though [Defendant] asserted that the parties were working pursuant to an Independent Contractor Operating Agreement, [Defendant] was unable to produce the Independent Contractor Operating Agreement that [Plaintiff] had previously entered on the record.
>
> c. [Plaintiff] further asserted that the inability to review the Independent Contractor Operating Agreement was the basis for his FSLA claim[,] notwithstanding the fact that he had uploaded the agreement to the Association's WebFile system.

*Id.* (concluding that Plaintiff's claims "are contradictory; moreover, he has demonstrated a total disregard for efficiently pursuing these claims, he imposed unnecessary costs[,] and interposed delay of over eight (8) months by failing to cooperate in the arbitration process").

In his Complaint, Plaintiff alleges that he pleaded his two claims in the alternative pending Defendant's search for an executed agreement between the parties, which was ultimately unfruitful.  The agreement that Plaintiff uploaded to the Association's WebFile system

was a general template that was not executed by either party.  Further, Plaintiff argues that, regardless of whether such a contract ever existed, proper resolution of the instant claims necessarily required a factual determination by DeWitt as to whether Battles was properly classified as an employee or independent contractor.  *See* Compl. at 9-10.  Accordingly, Plaintiff requests that the Court vacate DeWitt's judgment on two bases pursuant to the FAA – first, that his actions amount to misconduct and, second, that he exceeded his powers as an arbitrator.

## II.  Standard of Review

The FAA governs this case because the subject of the arbitration "evidences a transaction involving interstate commerce."  9 U.S.C. § 2; *see also Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir. 1993) ("Our review of commercial arbitration awards is controlled by the Federal Arbitration Act."); *see generally* Motion to Dismiss.  This statute "imposes a heavy presumption in favor of confirming arbitration awards," *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1288 (11th Cir. 2002), such that "federal courts should defer to an arbitrator's decision whenever possible."  *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010) (citation omitted); *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) ("Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts.") (citations omitted and alterations adopted).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his position."  *Pochat v. Lynch*, 2013 WL 4496548, at *5 (S.D. Fla. Aug. 22, 2013) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  "Accordingly, the Eleventh Circuit has described courts' confirmations of arbitration awards as 'usually routine or summary.'"  *Id.* (quoting

*Riccard*, 307 F.3d at 1288); *see Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("[A]rbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party .") (citation and internal quotation marks omitted). "Indeed, 'judicial review of arbitration decisions is among the narrowest known to the law.'" *Pochat*, 2013 WL 4496548, at *6 (quoting *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)) (citation and internal quotation marks omitted).

"Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute."[4]  *Frazier*, 604 F.3d at 1321 (emphasis in original) (holding that the statutory grounds for vacatur set out in FAA are exclusive); *see* 9 U.S.C. § 9.  Section 10 permits vacatur of arbitration awards only in four narrow circumstances, two of which are alleged here:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[5]  In applying these grounds, the Eleventh Circuit has instructed district courts to "bear in mind that the basic policy of conducting arbitration proceedings is to offer a means of

---

[4] Section 11 of the FAA provides that arbitration awards may be corrected or modified in three situations, none of which are relevant to the instant dispute.  9 U.S.C. § 11.

[5] Until recently, the Eleventh Circuit has recognized additional non-statutory grounds for relief, which Plaintiff does not invoke here, including (1) manifest disregard of the law by the arbitrator; (2) the award was arbitrary and capricious; and (3) enforcement of the award would violate public policy.  *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010) ("Although our prior precedents have recognized these three non-statutory grounds for vacatur, . . . *Hall Street* casts serious doubt on their

deciding disputes expeditiously and with lower costs than in ordinary litigation." *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir. 1991); *see Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998), *overruled in part on other grounds by Hall St.*, 552 U.S. 576 ("[W]e must recall the basic policy behind arbitration, which is to permit parties to resolve their disputes in an expeditious manner without all the formalities and procedures that might attend full fledged litigation.").  Through this lens, the Court addresses the instant Complaint.

### III. Discussion

Plaintiff seeks vacatur of the arbitration award pursuant to sections 10(a)(3) and (4), contending, respectively, that DeWitt acted with misconduct and/or exceeded his powers by failing to allow further prosecution of his underlying claims.  *See* 9 U.S.C. §§ 10(a)(3), (4).  These arguments are unavailing.

Plaintiff first avers that DeWitt engaged in affirmative misconduct by "refusing to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3) – instead, ruling against him based on his failure to attend the second hearing, before he had the opportunity to fully present his case.  This third ground for vacatur of an arbitration award concerns the manner in which the arbitrator conducted the hearing, authorizing vacatur where: (1) the arbitrators refused to postpone the hearing upon the showing of sufficient cause; (2) the arbitrators refused to hear pertinent and material evidence; or (3) the arbitrators were guilty of any other misbehavior that resulted in prejudice to the rights of any party.  *See* 9 U.S.C. § 10(a)(3).  To amount to misconduct under this section, an arbitrator must have acted in bad faith or committed an error so gross "as to amount to affirmative misconduct."  *United Paperworks*, 484 U.S. at 40.  In other words, "a mere difference of opinion between the arbitrators and the moving party as to the

---

legitimacy.").

correct resolution of a procedural problem will not support vacatur under section 10(a)(3)." *Scott*, 141 F.3d at 1016.  As the Eleventh Circuit has explained, "arbitration proceedings 'need not follow all the 'niceties' of the federal courts.'"   *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1443 (11th Cir. 1998) (quoting *Grovner v. Georgia-Pacific*, 625 F.2d 1289, 1290 (5th Cir. 1980)).  To the contrary, arbitrators "enjoy wide latitude in conducting an arbitration hearing," and they "are not constrained by formal rules of procedure or evidence."  *Id.* at 1443-44 (citation omitted).  "Although [arbitration] procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citation and internal quotation marks omitted).

Nevertheless, "courts have also emphasized that any efficiency in the arbitral process is constrained by the arbitrators' obligation to provide each party a fundamentally fair hearing." *Chem-Met Co. v. Metaland Intern. Inc.*, 1998 WL 35272368, at *4 (D.C. March 25, 1998); *see also Talel Corp. v. Shimonovitch*, 84 So. 3d 1192, 1994 (Fla. 4th DCA 2012).  "A fundamentally fair hearing is one that 'meets the minimal requirements of fairness' – adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator."  *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997) (quoting *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir. 1987)) (internal quotation marks omitted).  "When the exclusion of relevant evidence actually deprived a party of a fair hearing, therefore, it is appropriate to vacate an arbitral award."  *Id.*; *see, e.g.*, *Hall v. Eastern Air Lines, Inc.*, 511 F.2d 663, 664 (5th Cir. 1975) (refusing to enforce award because arbitration board refused to give weight to plaintiff's previously untendered alibi defense); *cf. Generica*, 125 F.3d at 1131 ("We

conclude that the arbitrator did not abuse his discretion in his handling of this evidentiary ruling. He had before him ample evidence upon which to decide the dispute.  He weighed the conflicting evidence (without considering [third-party testimony at issue]) and decided that [defendant] had breached the [a]greement.").

The Court finds *Fowler v. Ritz-Carlton Hotel Co., LLC*, 579 F. App'x 693 (11th Cir. 2014), instructive in interpreting the threshold "minimal requirements of fairness."  In that case, the plaintiffs failed to meet a number of deadlines, which resulted in the defendant's decision to file a motion to dismiss the arbitration based on their failure to prosecute. *Id.* at 694.  Although choosing to deny defendant's motion to dismiss, the arbitrator warned that "any further delay created by the [p]laintiffs or their counsel will not be tolerated in the absence of written proof of 'good cause' and will result in dismissal of the [plaintiffs'] claims with prejudice." *Id.* at 695 (alterations adopted).  Eventually, the defendant filed a motion for summary judgment on all claims for which plaintiffs were required to respond on December 28, 2012. *Id.*  They missed this deadline, however, and, instead, almost two months later, on February 25, 2013, the plaintiffs filed a motion requesting an additional five days to respond to the summary judgment motion. *Id.*  "The arbitrator denied the motion, finding that the [p]laintiffs had waived the right to respond." *Id.*  On April 30, 2013, the arbitrator issued awards in favor of defendant. *Id.*

The plaintiffs challenged the conduct of the arbitrator on these facts.  Pursuant to the inquiry presented by section 10(a)(3), the Eleventh Circuit found the plaintiffs' argument frivolous. *Id.* at 698.  Explaining its conclusion, the Court reasoned that "[t]he arbitrator allowed both parties a full and fair opportunity to present evidence," even though "[t]he [p]laintiffs did not take advantage of this opportunity, but instead filed a response to [defendant's] summary judgment motion almost two months late.  Nevertheless, the arbitrator still reviewed the entire

record in deciding the summary judgment motion." *Id.* at 698. Because an award is only vacated for refusal to consider evidence when an arbitrator's error is "in bad faith or so gross as to amount to affirmative misconduct," the Eleventh Circuit held that these allegations failed to meet the requisite high standard for vacatur. *Id.* (quoting *United Paperworkers*, 484 U.S. at 40).

The facts in the instant matter are similar and, therefore, militate that the Court reach a congruous result. As in *Fowler*, DeWitt chose to penalize the Plaintiff's repeated failure to participate in the arbitration process. Although the Arbitrator set December 16, 2014, as the deadline for the Plaintiff to file an amended statement of claim, Plaintiff did not file the amended Statement of Claim until three weeks after the deadline, on January 8, 2015. Compl. at 3. Nevertheless, for this Amended Statement, the Arbitrator requested additional information on "Plaintiff's claims in detail," including "the specific legal and factual issues addressed at the [p]reliminary [h]earing." Order No. 2. The parties corresponded for over eight months before finally settling on July 24, 2015, as the operative date for the second hearing. Blame for this initial delay may fall properly on both parties – but, regardless, it was only Plaintiff who then failed to attend on the scheduled date, despite notice being provided. "After 15 minutes waiting for [the Plaintiff] to join the hearing[,] the Association contacted [Plaintiff's c]ounsel by telephone and was advised that he was not available to participate in the [] call." Order No. 2. DeWitt found that this conduct, in sum, amounted to a failure to prosecute. *Id.* For this reason, he granted Defendant's Motion to Dismiss Plaintiff's FLSA claim and dismissed Plaintiff's remaining contract claim *sua sponte*, both with prejudice. Order No. 2.[6]

---

[6] Nevertheless, Order No. 2 is concerning to the extent that DeWitt does not make any finding on the merits of the underlying dispute therein. Because Battle missed the second hearing, the Arbitrator simply concluded that Battles had "abandoned" his claims. *Id.* He then took the "extreme" action, *see* Compl. at 6, of dismissing Plaintiff's claims with prejudice. Order No. 2. Furthermore, as Plaintiff points out, DeWitt does not clarify on which basis he is granting Defendant's Motion to Dismiss the FLSA claim. Indeed, the Motion to Dismiss first presents an argument for dismissal on the basis of statute of

Plaintiff is correct that, to the extent that DeWitt intended to rely on Defendant's argument for dismissal of the FLSA claim as time-barred, a proper application of the governing statute of limitations does not nullify the entirety of the FLSA claim.[7]  *See* 29 U.S.C. § 255(a) ("[I]f the cause of action accrues on or after May 14, 1947[, it] may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").  But, what Plaintiff fails to point out is that if he entered into a contract with Defendant or a third party as an independent contractor, as the pleadings suggest, then no FLSA claim can exist under these facts. So, although DeWitt did not clarify the grounds for his granting of the Motion to Dismiss specifically, it may very well have been for the simple reason that DeWitt could not make sense of Plaintiffs' claims.

DeWitt further explained his reasoning, relying on the merits of the controversy, in Order No. 3.  Importantly, he also demonstrated review of the original and amended Statements of Claim therein.  *Id.* (noting that Battles failed to "address the issue regarding his employment by a third party contractor" in the amended Statement of Claim).  The Order provided further analysis on the instant dispute, highlighting the problematic circularity of the claims.  Order No. 3 cites as grounds for dismissal, "among other discrepancies," a conflict between the FLSA and contract

---

[7] limitations, and then lists eight specific affirmative defenses to Plaintiff's claims.  *See* Motion to Dismiss at 3-4.  Accordingly, the Court may have been persuaded to grant vacatur on Order No. 2, standing alone, particularly as the Association's Non-Binding Consumer Arbitration Rules dictate that "[a]n award cannot be made only because of the default of a party."  Rule 38, "Arbitration in the Absence of a Party or Representative"; *see also Chem-Met Co. v. Metaland Intern. Inc.*, 1998 WL 35272368, at *2-4 (D.C. March 25, 1998) (vacating arbitration award where plaintiff was not given opportunity to present its case at a hearing on the evidence and arbitrators entered judgment without a written opinion).

[7] Here, Plaintiff represents that he entered into a contract with Defendant on July 24, 2011, and the instant Arbitration was initiated on August 23, 2014.  Thus, although potentially dependent upon additional facts not currently within the purview of the Court, presumably, any damages incurred in the three-year time window before August of 2014 are available for recovery.

claims, insofar as one (the breach of contract claim) relies on the stipulation that the parties entered into an Independent Contractor Operating Agreement and the other (the FLSA claim) cannot exist without an employee relationship – which is directly counter to an independent contractor relationship.  *See id.* ("In his Amended Claim, [Plaintiff] asserted that though [Defendant] asserted that the parties were working pursuant to an Independent Contractor Operating Agreement, [Defendant] was unable to produce the Independent Contractor Operating Agreement that [Plaintiff] had previously entered on the record. . . .  [Plaintiff] further asserted that the inability to review the Independent Contractor Operating Agreement was the basis for his FSLA claim.").

Although this explanation alone is less than thorough, again, the Court's scope of review of an arbitration award is exceedingly narrow.  The FAA did not require that DeWitt review every piece of evidence that Battles wished to submit without an attendant demonstration that this evidence was material to his claims.  Rather, "[an arbitrator, like DeWitt,] need only give each party the opportunity to present its arguments and evidence." *Robbins v. Day*, 954 F.2d 697, 685 (11th Cir. 1992), *overruled on other grounds*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995); *see Booth v. Hume Pub.,* 902 F.2d 925, 932 ("[T]he Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues.") (citation omitted); c*f. Hall v. Eastern Air Lines, Inc.*, 511 F.2d 663, 664 (5th Cir. 1975) (refusing to enforce award because arbitration board refused to give weight to plaintiff's previously untendered alibi defense).  "[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors, Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).

Case No. 15-cv-62247-BLOOM/Valle

Thus, section 10(a)(3) "does not . . . invite hindsight evaluations of the correctness of the judgment of an arbitration panel in managing the presentation of evidence during an arbitration," or the like. *Id.* (quoting *Marshall & Co. v. Duke*, 941 F .Supp. 1207, 1211 (N.D. Ga. 1995)). Rather, it is reserved for cases in which a plaintiff can show that an arbitrator's handling of a matter "was in bad faith or so gross as to amount to affirmative misconduct, effectively depriving the plaintiff of a fundamentally fair proceeding." *Id.* This is not such a case. Accordingly, Plaintiff's argument is foreclosed by binding precedent.

Plaintiff attempts to make the same argument under section 10(a)(4), claiming that DeWitt exceeded his authority "by failing to allow testimony by [Battles]." Compl. at 11. An arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). However, "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *White Springs Agricultural Chemicals, Inc. v. Glawson Investments Corp.*, 660 F.3d 1277, 1281 (11th Cir. 2011) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)) (second and third alterations in original) (quotation marks and citation omitted). No allegations of the sort exist here. Plaintiff's argument that the Arbitrator refused to hear pertinent and material evidence, therefore, is an argument more appropriately invoked under subsection (3), rather than subsection (4). *See* 9 U.S.C. § 10(a)(3). Regardless, as discussed *infra*, Battles cannot "surmount the high hurdle" necessary for vacating an arbitration under either section. *See, e.g.*, *Southern Mills, Inc. v. Nunes*, 586 F. App'x 702, 704 (11th Cir. 2014).

14

Case No. 15-cv-62247-BLOOM/Valle

**IV. Conclusion**

The Court sympathizes with Battles' claim that DeWitt's handling of the arbitration was suboptimal; nevertheless, the FAA does not afford relief for such a claim. Eleventh Circuit precedent counsels that DeWitt's decision to dismiss the Plaintiff's claim at a duly-noticed hearing – before Plaintiff had presented additional evidence on his claims – does not amount to misconduct so egregious as to warrant vacatur. DeWitt gave Battles the opportunity to present further arguments and evidence at a second hearing – although Battles failed to capitalize on this opportunity. The Court must, therefore, defer to the Arbitrator's decision. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The arbitration award, *see* ECF Nos. [1-4] and [1-8], is **CONFIRMED**.

2. Plaintiff's Motion to Quash Arbitration Award, **ECF No. [1]**, is **DISMISSED**.

3. The Clerk is directed to enter judgment in accordance with the arbitration award and **CLOSE** the above-styled case.

4. Any pending motions are hereby **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 30th day of March, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copied to: Counsel of record

15